**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
KATRINA WATKINS,

                        Plaintiff,

      -against-

WAL-MART STORES EAST, LP,

                        Defendant.
----------------------------------------------------------X

**MEMORANDUM & ORDER**

CV 17-1543 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

On September 28, 2018, this Court issued a short-form Order granting Defendant's motion for summary judgment. *See* DE 23. In that Order, the Court noted that the substantive written decision would follow. This Memorandum and Order sets forth the Court's substantive decision.

**I.    PRELIMINARY STATEMENT**

Plaintiff Katrina Watkins ("Plaintiff") commenced the instant negligence action in New York State Supreme Court alleging that she suffered injuries when she tripped and fell on the premises of Defendant Wal-Mart Stores East, LP ("Defendant" or "Wal-Mart") in Suffolk County, New York. *See generally* Plaintiff's Complaint ("Compl.") [DE 1]. Following removal of the action to federal court, the parties consented to this Court's jurisdiction for all purposes, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* DE 8. The parties have conducted and completed discovery.

Presently before the Court is Defendant's motion for summary judgment, which Plaintiff opposes.[1]  *See* Defendant's Rule 56.1(a) Statement of Undisputed Material Fact ("SOMF") [DE 18]; Defendant's Memorandum in Support of its Motion ("Def.'s Mem.") [DE 19]; Defendant's Affidavit and Exhibits in Support [DE 17]; Defendant's Memorandum in Reply ("Def.'s Reply") [DE 21]; Plaintiff's Memorandum in Opposition ("Pl.'s Opp'n.") [DE 20].  For the reasons set forth below, Defendant's motion for summary judgment is GRANTED, and this case is dismissed.

II.   **BACKGROUND**

   A.   **Factual Background**

While the Court would normally recite the undisputed facts as stated in the parties' Rule 56.1(a) Statement of Undisputed Fact and Rule 56.1(b) Counterstatement, there are two issues which prevent the Court from doing this here.  First, Plaintiff did not file a Rule 56.1(b) Counterstatement.  Second, Defendant's Rule 56.1(a) Statement does not specify what Defendant asserts to be the undisputed material facts of the case *per se*, but rather summarizes what it sees as the relevant allegations and evidence advanced by both sides.  Defendant organizes its Rule 56.1(a) Statement into the following sections:  Plaintiff's Bill of Particulars and the allegations it contains, *see* SOMF ¶¶ 1-4; Plaintiff's deposition testimony, *see id*. ¶¶ 5-22; the deposition testimony of Defendant's two witnesses, *see id*. ¶¶ 23-44; Plaintiff's discovery demands, *see id*. ¶¶ 42-44; and a description of the security camera footage of the incident.  *See id*. ¶¶ 45-48.  Constructed in this manner, Defendant's Rule 56.1(a) Statement is problematic, as it risks

---

   [1]   As discussed in greater detail below, Plaintiff has failed to file a Rule 56.1(b) Counterstatement in response to the Defendant's factual assertions, and provides the Court with only a Memorandum of Law in Opposition.

inadvertently putting at issue several material facts which, in the absence of a Rule 56.1(b) Counterstatement from Plaintiff, would otherwise be undisputed.[2]

Because of the two irregularities identified above, the Court has conducted an independent review of the record, from which the Court recites what it considers to be the undisputed and disputed facts. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (holding that a district court may "opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file [ ] a statement [of fact].") (quoting *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 292 (2d Cir. 2000)). In doing this, the Court construes the facts in the light most favorable to the Plaintiff as the nonmoving party. *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001); *Coastal Pipeline Prod. of New York v. Gonzales*, No. 04 CIV. 8252, 2006 WL 473883, at *4 (S.D.N.Y. Feb. 28, 2006).

    1.    ***Undisputed Facts***

The following facts are undisputed, in that there is no conflict between the Plaintiff's deposition testimony and the other evidence presented by Defendant in support of its motion.

On September 23, 2015, at approximately 9:50 a.m., Plaintiff entered the Middle Island Wal-Mart store in Suffolk County, New York. Security Camera Footage ("Sec. Footage") attached to the Affidavit of Patricia O'Connor, Esq. ("O'Connor Aff.") [DE 17] as Exhibit N [DE 17-14]. She entered through two sets of doors. *Id.*; Deposition Testimony of Katrina

---

[2] For example, under the heading "Sworn Testimony of [Katrina Watkins]," Defendant's Rule 56.1(a) Statement asserts that Plaintiff "tripped on 'carpet,'" and that a female employee "mentioned [to Plaintiff] that they needed to have the carpet fixed." SOMF ¶¶ 8, 18. It would make no sense for Defendant to assert that these "facts" are undisputed, since doing so would defeat its motion. However, it is unclear from Defendants Rule 56.1(a) Statement exactly how and to what extent Defendant disputes the substance of these assertions.

Watkins ("Watkins Dep."), attached to the O'Connor Aff. as Exhibit E [DE 17-5] at 33: 11-12. After taking several steps once inside the store, Plaintiff fell to the ground. Sec. Footage; *see* Watkins Dep. at 33-35. At the location of Plaintiff's fall there were two large identical "mats" on the floor. Deposition Testimony of Joseph Calvacca ("Calvacca Dep."), attached to the O'Connor Aff. as Exhibit H [DE 17-8] at 21: 4-6, 22: 16-21; Sec. Footage; Watkins Dep. at 36: 24-25, 37: 1-10 These mats were "Berber, gray and black, and off of the carpet was [ ] rubber that [ ] graded down to the floor," and at the time of the incident, these mats were "three, four months old, five [ ] tops." Deposition Testimony of Karen Alles ("Alles Dep."), attached to the O'Connor Aff. as Exhibit K [DE 17-11] at 12: 2-4, 13: 7-8; *see* Calvacca Dep. at 22: 22-24. Plaintiff did not see the mats prior to falling to the ground. Watkins Dep. at 36: 10-12. Plaintiff did not make any observations of the condition of the mats while she was on the floor. *Id.* at 41: 51-22. Plaintiff was wearing "flip flop" sandals at the time of the incident. *Id.* at 38: 17-23; Calvacca Dep. at 40: 23-24. At the time of the incident, it was not raining, and Plaintiff's surroundings were not crowded; rather, she "was alone." *Id.* at 31: 19-23, 35: 24-25, 36: 2.

Plaintiff filled out and signed an "incident report" following her fall. Watkins Dep. at 49, 50: 1-17; Wal-Mart Customer Incident Report ("Incident Rep."), attached to the O'Connor Aff. as Exhibit G [DE 17-7]. In the report, Plaintiff states that she "was walking into Wal-Mart at 9:45 a.m. and hit the edge of the carpet. Foot went slightly under it, and I fell fo[r]ward. Tried to keep [ ] from falling and fell forward." Incident Rep. The report also states that the incident was reported to Wal-Mart employees "Joseph" and "Karen." *Id.* Next to a line for "Management Signature" appears the signature of "Joseph Calvacca." *Id.*

Joseph Calvacca ("Calvacca") was an assistant manager on duty at Defendant's store on September 23, 2015, working a shift from the store's opening at 7 a.m. until 6 p.m. Calvacca

4

Dep. at 7: 17-19, 8: 3-5, 10-13. Karen Alles ("Alles") was a "Zone Supervisor of the front end" of the store who was also present at the store on September 23, 2015. Alles Dep. at 5: 23-25, 15: 5-7. Prior to September 23, 2015, Calvacca had never noticed a tripping hazard with mats at the main entrance of the store. Calvacca Dep. at 26: 2-5. Nor was he aware of any complaints about the mats at the front of the store, or injuries caused by the mats, prior to September 23, 2015. *Id*. at 63: 2-5, 64: 2-7. Calvacca and other Wal-Mart employees were required to be observant for "safety concerns" throughout the store and they received training for this purpose. *Id.* at 27: 2-5, 19-25, 28: 2-21. At the time of the incident there was also a "safety team" comprised of different store employees who met once a week and walked the store to check for potential safety concerns. Alles Dep. at 7: 5-19. As part of this "safety walk," employees would visually inspect the conditions of the mats at the front of the store and at other locations in the store. *Id*. at 11: 6-25, 12: 2-11. Alles would also visually inspect the mats at the front of the store three times per day during her shifts, "[m]orning, afternoon and night . . . and if it was raining, it was more often." *Id*. at 14: 8-18.

Both Calvacca and Alles first learned of Plaintiff's fall through a "Code White" call on the store's intercom system. Calvacca Dep. at 37: 21-25; Alles Dep. at 23: 14-18. Alles also called Calvacca independently after she heard the Code White. Alles. Dep. at 24: 14-17. A "Code White" indicates to employees that a customer has potentially been injured. Calvacca Dep. at 38: 25, 39: 2-4. When Plaintiff spoke to Calvacca after her fall, she told him that she had recently had back surgery, but that she did not require medical attention. *Id*. at 51: 8-12.

According to the security camera footage of the time frame encompassing the incident, between 9:02:48 a.m. and the time of Plaintiff's fall at 9:50:50 a.m., approximately 110 people, 21 carts, and two scooters passed over the entrance mats of the store without incident. Sec.

5

Footage. From the time of Plaintiff's fall until 10:31:01 a.m., another 162 people and 14 carts passed over the entrance mats without incident. *Id*.

### 2. *Disputed Facts*

As already noted, Plaintiff has not submitted a Rule 56.1(b) Counterstatement or any independent evidence in opposition to Defendant's motion. Notwithstanding this fact, the Court notes that there are several points of conflict in the evidence presented by Defendant, specifically between Plaintiff's deposition testimony regarding events immediately following her fall, and the deposition testimony of Alles and Calvacca on the same subject. The Court considers the following facts to be "disputed" for this reason.

### a. **Plaintiff's Testimony**

Plaintiff alleges that two individuals whom she believes were Wal-Mart employees came over to assist her after her fall. Specifically, Plaintiff testified that she was approached by "a man in the store or a manager in the store and a young lady behind the service counter . . . within minutes" of her fall, and that they both "came around the same time." Watkins Dep. at 41. The man asked if Plaintiff wanted to file a report. *Id*. at 42: 16. He also "got some paper towels and wet them so [she could] put them on [her] knee and then he helped [Plaintiff] up and took [her] to . . . a food area." *Id*. at 44: 14-18. With regard to the woman, Plaintiff testified that when she was sitting in the "food court," the woman "mentioned that they needed to have the carpet fixed, and that [Plaintiff] wasn't the first person who fell there." *Id*. at 45: 2-4. According to Plaintiff, who is African-American, this woman "was also black" and "[m]aybe in [her] 20s." *Id*. at 45: 20-23. When she was speaking with the woman, Plaintiff testified that the "manager" had gone to get the paperwork for Plaintiff to fill out. *Id*. at 45: 6-8.

### b. Karen Alles' Testimony

Alles testified that when she arrived at the scene of the incident, Plaintiff was not present there, but rather was sitting in a McDonalds which at the time was located in the vicinity of the front entrance. Alles Dep. at 25: 6-8, 27: 10-19. At her deposition, Alles was shown an image from the security camera footage and testified to seeing an African-American woman with a lanyard at the scene of the incident. *Id*. at 26: 6-19. However, Alles was unable to state if the woman was a Wal-Mart employee. *Id*. Alles testified that she approached the Plaintiff at the McDonalds and "spoke to her briefly, [and] asked if she needed anything. [Plaintiff] told [Alles] she had previous injuries and she just wanted to document" the incident. *Id*. at 30: 4-6. According to Alles, this was the extent of her conversation with the Plaintiff. *Id.* at 30: 22-24. Alles was unable to recall if she was with anyone else at the McDonalds when Alles approached her. *Id*. at 29: 7-20. Alles states she remained with the Plaintiff until Calvacca arrived. *Id*. at 30: 25, 31: 2-5.

### c. Joseph Calvacca's Testimony

Calvacca states that he responded to the Code White and brought an incident file form with him to Plaintiff's location. Calvacca Dep. at 39: 3, 9-12. According to Calvacca, Plaintiff was seated on a "bench" near the front of the store, separate from the McDonalds, when he approached her for the first time. *Id*. at 52: 2-15. Calvacca does not recall if Alles or any other Wal-Mart employee was with the Plaintiff when he approached her. *Id*. at 51: 3-23. Calvacca had a brief conversation with the Plaintiff; however, he makes no mention in his deposition testimony of assisting Plaintiff off the ground or wetting "paper towels" for her scraped knee.

B.     **Relevant Procedural History**

The Complaint in this case was filed in the New York Supreme Court, Suffolk County, on or about August 16, 2016.  *See* DE 1.  On March 20, 2017, Defendant filed a notice of removal to have the case removed to federal court.  *See id*.  Shortly thereafter, on March 31, 2017, the parties filed a notice of consent to have this case adjudicated for all purposes by a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  *See* DE 7.  That consent was "so ordered" by District Judge Wexler on April 6, 2017.  *See* DE 8.

Counsel for both parties appeared before the undersigned for an Initial Conference on May 30, 2017.  *See* DE 13.  Subsequently, a Telephone Status Conference was held on August 9, 2017, at which time the Court confirmed that discovery was almost completed, and a briefing schedule for Defendant's motion for summary judgment was set.  *See* DE 14.  The parties filed the fully briefed motion for summary judgment on November 9, 2017.  *See* DE 16-21.

III.    S&#x1d1b;ANDARD OF R&#x1d07;VIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  F&#x1d07;D. R. C&#x1d1b;V. P. 56(a).  The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 108 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  To determine whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising from the evidence in the light most favorable to the non-moving party.  *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498

F.3d 152, 155 (2d Cir. 2007); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005). In dispatching this task, a court need only consider admissible evidence. *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997)); *Hilaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 251 (E.D.N.Y. 2014).

Where the movant shows a *prima facie* entitlement to summary judgment, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006); *Miller v. Nassau Health Care Corp.*, No. 09 Civ. 5128, 2012 WL 2847565, at *3 (E.D.N.Y. July 11, 2012). "[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment." *Salahuddin*, 467 F.3d at 273; *see McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001) ("Even where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor."). Summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Dobbs v. Dobbs*, No. 06 Civ. 6104, 2008 WL 3843528, at *5 (S.D.N.Y. Aug. 14, 2008) ("The Court's goal should be to isolate and dispose of factually unsupported claims.") (internal quotation marks omitted).

This case invokes the Court's diversity jurisdiction, and, as such, the Court must point out a distinction between the summary judgment standard under the Federal Rules of Civil Procedure and the applicable standard under New York State law. Under the Federal Rules,

"[i]n moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 399 (E.D.N.Y. 2010) (quoting *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995)); *see Celotex,* 477 U.S. at 325 (determining that the movant's summary judgment burden may be "discharged by 'showing'—that is, by pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case"). Under the law of New York State, by contrast, a defendant in a personal injury action may not satisfy its summary judgment burden "merely by pointing to gaps in the plaintiff's case," *Davranov v. 470 Realty Assocs., LLC*, 79 A.D. 3d 697, 697-98, 911 N.Y.S.2d 912 (2d Dep't. 2010), but rather must submit affirmative evidence in support of its position. *See Totten v. Cumberland Farms, Inc.*, 57 A.D.3d 653, 654, 871 N.Y.S.2d 179, 180 (2d Dep't. 2008) ("No evidence was elicited as to when the parking lot was last inspected and no information was provided as to the defendant's general policy on inspecting and maintaining the parking lot. Accordingly, the defendant failed to meet its initial burden as the movant.").

A "federal court with diversity jurisdiction over a case must apply the substantive law of the state in which it sits under the *Erie* doctrine." *Shimunov v. Home Depot U.S.A, Inc.*, No. 11-CV-5136, 2014 WL 1311561, at *3 (E.D.N.Y. Mar. 28, 2014) (citing *Allianz Ins. Co. v. Lerner,* 416 F.3d 109, 118 (2d Cir. 2005)). However, "the Second Circuit has affirmed that 'the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions,' and are governed by Federal Rule of Civil Procedure 56 rather than state procedural law." *Shimunov*, 2014 WL 1311561, at *3 (quoting *Tenay v. Culinary Teachers Ass'n of Hyde Park,* 281 Fed. App'x 11, 13 (2d Cir. 2008) (summary

order)); *see Goenaga*, 51 F.3d at 18; *Ross v. New Canaan Envtl. Comm'n*, 532 Fed. App'x 12, 12-13 (2d Cir. 2013) (summary order). The Court therefore applies the federal standard, and Defendant's summary judgment burden is satisfied if it can point to "an absence of evidence to support an essential element" of Plaintiff's negligence claim.[3] *Doona*, 680 F. Supp. 2d at 399.

## IV. DISCUSSION

### A. Plaintiff's Sole Claim: Negligence

As mentioned above, since this case proceeds under the Court's diversity jurisdiction, the Court applies the substantive law of New York while analyzing Plaintiff's claim for negligence.

#### *1. Negligence Under New York Law*

To establish a prima facie claim of negligence under New York law, "a plaintiff must demonstrate (i) the existence of a duty of care owed by the defendant to the plaintiff; (ii) breach of that duty; (iii) damages or injury proximately caused by the defendant's breach." *Gonzalez v. Aramark Food & Support Servs. Grp. Inc.*, No. 09-CV-4843, 2012 WL 1019982, at *3 (E.D.N.Y. Mar. 26, 2012) (citing *Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998)). "In addition, to show that the defendant breached its duty of care and 'make out a prima facie case of negligence in a slip and fall case, the plaintiff must prove either that [the] defendant had knowledge of the alleged dangerous condition, either actual or constructive, or that it caused the condition to be created by its own affirmative act.'" *Shimunov*, 2014 WL 1311561, at *4 (quoting *Riley v. Battery Place Car Park,* 210 Fed. App'x 76, 77 (2d Cir. 2006) (summary

---

[3] At first glance, Defendant's Memorandum in Support of its motion would appear to utilize this method of satisfying its burden -- its headings state "There Is No Evidence Whatsoever That A Dangerous Condition Existed In the Defendant's Store" and "There is Here No Evidence That This Defendant Had Actual Notice of A Purportedly Raised Mat/Carpet In Its Store." Def.'s Mem. at 4. However, Defendant does submit affirmative evidence to satisfy its burden, as described below.

order)); *Drago v. DeLuccio*, 79 A.D.3d 966, 913 N.Y.S.2d 747 (2d Dep't. 2010) ("To impose liability upon the defendants for the plaintiff's fall, there must be evidence tending to show the existence of a dangerous or defective condition and that the defendants either created the condition or had actual or constructive notice of it and failed to remedy it within a reasonable time.").

As to the dangerousness or defectiveness of a condition, "[t]he test established by the case law in New York is not whether a defect is *capable* of catching a pedestrian's shoe. Instead, the relevant questions are whether the defect was difficult for a pedestrian to see or to identify as a hazard or difficult to pass over safely on foot in light of the surrounding circumstances." *Langgood v. Carrols, LLC*, 148 A.D.3d 1734, 1735, 50 N.Y.S.3d 733 (4th Dep't. 2017) (emphasis in original) (quoting *Hutchinson v Sheridan Hill House Corp.*, 26 N.Y.3d 66, 80 (2015)).

### 2. *Application to the Facts*

The Court has examined the still photographs and footage of the incident from the store's security camera. Beyond the fact that Plaintiff appears to have fallen at the location of the edge of one of the mats, there is no visible indication of any defect or otherwise dangerous condition. Additionally, it is undisputed that between 9:02:48 a.m. and the time of Plaintiff's fall at 9:50:50 a.m., approximately 110 people, 21 carts, and two scooters passed over the entrance mats of the store without incident. Sec. Footage. Similarly, from the time of Plaintiff's fall to 10:31:01 a.m., another 162 people and 14 carts passed over the entrance mats without incident. *Id*. It is also undisputed that Plaintiff did not see the mat that she alleged caused her to fall prior to falling to the ground, Watkins Dep. at 36: 10-12, and she did not make any observations of the condition of the mat while she was on the floor. *Id.* at 41: 51-22. Lastly, it is undisputed that at the time of

12

the incident, it was not raining, and Plaintiff's surroundings were not crowded; rather she "was alone." *Id*. at 31: 19-23, 35: 24-25, 36: 2.

In *Langgood v. Carrols*, *LLC*, the Appellate Division, Fourth Department reversed the trial court's decision denying a defendant-restaurant's motion for summary judgment in a personal injury action bearing a close resemblance to the instant action. In that case, the plaintiff alleged he sustained injuries when he tripped on a rug while entering defendant's restaurant. It was undisputed that photographs did not reveal any defects or irregularities with the rug, the conditions "were bright enough to see," the area of the incident was "unobstructed," and "no other patrons had an issue traversing the doors and over the rug." *Langgood*, 148 A.D.3d at 1735-36. The Appellate Division concluded that "'[i]n view of the time, place, and circumstances of plaintiff's injury,' . . . defendant established as a matter of law that any defect in the rug was too trivial to be actionable." *Id.* at 1736.

Other courts have made similar determinations on similar factual records. *See Stein v. Sarkisian Bros.*, 144 A.D.3d 1571, 1572, 40 N.Y.S.3d 818 (4th Dep't. 2016) ("[I]n view of the less than ½-inch height of the bullnose tile and the circumstances surrounding decedent's accident we conclude that, although an accident occurred that is 'traceable to the defect, there is no liability' because the alleged defect 'is so slight that no careful or prudent [person] would reasonably anticipate any danger from its existence.'") (quoting *Hutchinson*, 26 N.Y.3d at 81) (citations omitted); *Germain v. Kohl's Corp.*, 96 A.D.3d 1474, 1475, 947 N.Y.S.2d 700 (4th Dep't. 2012) (concluding that a defect in the raised duct taped covering where rugs were adjoined was "too trivial to be actionable" where engineer measured the height of the defect at 5/16 and 3/8 of an inch, plaintiff did not observe the tape before she fell, she could not recall whether the tape was "pulled up" from the rugs after she fell, and "the accident occurred on a

13

sunny day with no other customers in her vicinity"); *Drago*, 79 A.D.3d at 966 (affirming the trial court's grant of summary judgment for defendants where plaintiff allegedly tripped on a floor mat that had become "rolled up," where "plaintiff admitted at her deposition that she did not notice the mat at any time prior to the fall on the day of the occurrence, and that it was only after she fell that she observed the mat in a 'rolled up' position"); *Sharpe v. Ulrich Dev. Co., LLC*, 52 A.D.3d 1319, 1320, 859 N.Y.S.2d 851 (4th Dep't. 2008) ("After examining the photographs depicting the width, depth and irregularity of the defect in the sidewalk, and in view of the time, place and circumstances of plaintiff's injury, we conclude that defendants established as a matter of law that the defect is too trivial to be actionable.").

Adopting the reasoning of the court in *Langwood* and the other cases cited above, this Court concludes that, on the factual record here, any defect in Defendant's mats was too trivial to be actionable under New York law. Accordingly, Defendant has met its burden on summary judgment by showing the absence of a genuine issue of material fact, and it is entitled to judgment as a matter of law. *See Shimunov*, 2014 WL 1311561, at *3. Plaintiff has, in turn, failed to point to any evidence creating a genuine issue of fact which would rebut Defendant's entitlement to judgment as a matter of law.[4] Indeed, Plaintiff submits no independent evidence in opposition to Defendant's motion.

Because the Court has determined that as a matter of law there was no actionable defect in Defendant's mats, the Court need not determine whether Defendant "had knowledge of the

---

[4] The Court notes that, as previously outlined, there are disputes as to what happened after Plaintiff fell. However, since the undisputed factual record regarding the nature of the alleged defect and the circumstances of Plaintiff's fall warrant a legal finding that any defect was too trivial to be actionable, any dispute regarding what happened after Plaintiff's fall is not a dispute of *material* fact. That is, these facts, even if decided in Plaintiff's favor, do not affect the Court's determination. *See Anderson*, 477 U.S. at 248 (explaining that a fact is "material" if it "might affect the outcome of the suit under the governing law").

alleged dangerous condition, either actual or constructive, or that it caused the condition to be created by its own affirmative act." *Shimunov*, 2014 WL 1311561, at *4 (quotations omitted). Nonetheless, the Court notes that based on the following undisputed facts, it seems unlikely that Plaintiff could establish Defendant's actual or constructive knowledge of any defect: Calvacca was unaware of any complaints about the mats at the front of the store, or injuries caused by the mats, prior to September 23, 2015, Calvacca Dep. at 63: 2-5, 64: 2-7; Calvacca and other Wal-Mart employees were required to be observant for "safety concerns" throughout the store, and they received training for this purpose, *id.* at 27: 2-5, 19-25, 28: 2-21; at the time of the incident there was also a "safety team" comprised of different store employees who met once a week and walked the store to check for potential safety concerns, Alles Dep. at 7: 5-19; as part of this "safety walk," employees would visually inspect the conditions of the mats at the front of the store and at other locations in the store, *id*. at 11: 6-25, 12: 2-11; and Alles would visually inspect the mats at the front of the store three times per day during her shifts, "[m]orning, afternoon and night . . . and if it was raining, it was more often." *Id*. at 14: 8-18.

Plaintiff argues that the African-American female who allegedly made statements to her following her fall -- that Defendant needed "to have the carpet fixed," and that Plaintiff "wasn't the first person who fell there" -- was a Wal-Mart employee, and her statements therefore establish Defendant's constructive knowledge of a defect. Pl.'s Opp'n. at 5-6. According to Plaintiff, these statements are admissible under Federal Rule of Evidence 801(d)(2)(D) as statements of a party opponent. *Id*. In the Court's view, there is insufficient evidence in the record supporting that this woman was Defendant's employee for Plaintiff to make use of Rule 801(d)(2)(D). *See Marcic v. Reinauer Transp. Companies*, 397 F.3d 120, 128-29 (2d Cir. 2005) ("In order to introduce evidence of an out-of-court statement as nonhearsay under Rule

15

801(d)(2)(D), a party must lay a sufficient foundation by establishing (1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency.") (internal quotations omitted); FED. R. EVID. 801(d)(2) ("The statement . . . does not by itself establish the . . . the existence or scope of the [agent or employee] relationship . . . ."). Plaintiff's theory of constructive knowledge would likely fail as a result.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment. The Clerk of the Court is directed to close this case.

                                                  **SO ORDERED.**

Dated: Central Islip, New York
       October 11, 2018

                                              <u>/s/ A. Kathleen Tomlinson</u>
                                              A. KATHLEEN TOMLINSON
                                              U.S. Magistrate Judge